WO                                                                                                                                      MDR

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth W. Reed, | No. CV 21-00016-PHX-JAT (CDB) |
| Plaintiff, | |
| v. | **ORDER** |
| Trinity Services Group, Inc., et al., | |
| Defendants. | |

**I.     Relevant Procedural History**

On November 12, 2019, Plaintiff Kenneth W. Reed, who is confined in the Arizona State Prison Complex-Tucson in Tucson, Arizona, filed a Complaint in the Superior Court of Pima County, Arizona, against Trinity Services Group ("Trinity"), Charles L. Ryan, Ruben Montaño, David Merriman, Jones, Gaye, K. Muko, L. Valisto, P. Tuozzo, Barr, Urrea, and eleven fictitiously named individuals.  On November 25, 2020, Defendant Merriman filed a Notice of Removal in the Tucson Division of this Court and removed the case to this Court.

On December 29, 2020, Plaintiff filed a "Motion for Remand of Cause" and a "Motion to Correct Clerical Error-Wrong Venue," in which he alleged that this action should have been transferred to the Phoenix Division of this Court because the transactions and events discussed in the Complaint occurred at the Arizona State Prison Complex-Florence in Florence, Arizona.  On January 4, 2021, Defendant Trinity filed a "Joinder in or Consent to Removal."

In a January 6, 2021 Order, United States District Court Senior Judge Raner C. Collins granted the Motion to Correct Clerical Error-Wrong Venue and directed the Clerk of Court to transfer this action to the Phoenix Division. The Clerk of Court did so and assigned the case to the undersigned. In a January 29, 2021 Order, the Court denied Plaintiff's Motion for Remand and dismissed the Complaint for failure to comply with Local Rule of Civil Procedure 3.4. The Court gave Plaintiff thirty days to file an amended complaint on a court-approved form.

On February 3, 2021, Plaintiff filed a Motion for Enlargement of Time to File Reply Memorandum and lodged an "Objection to Defendant Trinity Services Group, Inc's Joinder in or Consent to Removal: Reply to Apparent Response to Motion for Remand of Cause" (the "Objection"). In a February 5, 2021 Order, the Court granted the Motion for Enlargement of Time, directed the Clerk of Court to file the Objection, and considered the Objection timely filed. The Court reviewed the Objection, but concluded that the information in the Objection did not alter the Court's conclusions in the January 29 Order.

On February 16, 2021, Plaintiff filed a "Motion for Reconsideration of, and/or Relief From Court's January 29, 2021 Order." In a March 1, 2021 Order, the Court denied the Motion for Reconsideration. That same day, Plaintiff filed a Motion requesting the Court suspend the deadline for him to file his first amended complaint until after the Court ruled on Motion for Reconsideration or, alternatively, grant him a thirty-day extension of time to file his first amended complaint. In a March 12, 2021 Order, the Court denied as moot the request to suspend the deadline because the Court had already ruled on the Motion for Reconsideration and granted Plaintiff's request for an extension of time to file his first amended complaint. The Court gave Plaintiff until April 1, 2021, to file his first amended complaint and warned Plaintiff that the Clerk of Court would enter a judgment of dismissal, without prejudice and without further notice, if Plaintiff failed to timely file his first amended complaint.

Because Plaintiff did not file his first amended complaint on or before April 1, 2021, the Clerk of Court entered Judgment on April 5, 2021.

## II. Pending Motions

On April 5, 2021, Plaintiff filed a "Motion to Reset Deadline for Filing Amended Complaint, Pending and Contingent Upon Hearing and Disposition of Request for Court's Assistance, Locating and Securing Representation for Plaintiff" (Doc. 20), a "Motion to Stay Proceedings Pending Disposition of Motion for Change of Judge" (Doc. 21), a "Request for Court's Assistance, Locating and Securing Representation for Plaintiff" (Doc. 22), and a Declaration in Support of the Request.

### A. The Court will Vacate the Judgment

According to Plaintiff's Certificates of Filing and Service, his documents docketed on April 5, 2021, were delivered to prison officials for mailing on April 1, 2021. Under the "prison mailbox rule," a document is deemed "filed" when delivered by the prisoner to a prison official for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009). Thus, the Court will treat the four documents as though they were received before the Judgment. The Court will vacate the April 5, 2021 Judgment and will address the two motions and the Request for Court's Assistance.

### B. Motion to Stay Proceedings

In his Motion to Stay Proceedings, Plaintiff requests the Court stay this action "until such time as the Motion for Change of Judge [Plaintiff] is filing in [*Reed v. Arizona*, CV-20-00758-PHX-JAT (CDB)] is decided." Plaintiff requests the stay "[l]est [the undersigned's] bias against the Plaintiff become evident in these proceedings, although, more importantly, to prevent any question every being raised that [the Court] might have been vindictively motivated to unfairly adjudicate some aspect of this case."

The Court dismissed *Reed v. Arizona*, CV-20-00758, in a March 1, 2021 Order; Judgment was entered the same day; and the Court denied Plaintiff's post-judgment Motion for New Trial and to Alter or Amend Judgment in an April 12, 2021 Order. There is no basis for staying proceedings in the current lawsuit based on a non-existent motion Plaintiff anticipates filing in an already-closed action. Thus, the Court will deny Plaintiff's Motion to Stay Proceedings.

C.    **Request for Court's Assistance Locating and Securing Representation**

1.    **Plaintiff's Request**

Plaintiff requests the Court assist him in "canvassing the local community to locate an attorney who would be willing to represent him in this matter." (Doc. 22 at 1.)[1] He asserts that he is: uneducated and untrained in the law; indigent and, therefore, unable to hire an attorney, purchase legal reference materials, or pay for legal research assistance; housed at a facility where he does not have access to a law library; and only given access to nineteen legal resources, none of which, other than an incomplete copy of *Lewis v. Casey*, 518 U.S. 343 (1996), contains any "published judicial opinions or case finding aids." (*Id*. at 3.)

Plaintiff contends his Complaint was 28 pages long, raised claims against 22 defendants, and included "everything of relevance" because he did not have access to "legal research tools and resources" and did not want to omit "one of more of those elements which are necessary *sine qua non* to stating a claim upon which relief can be granted." (*Id*. at 4.) Plaintiff claims that after the Court dismissed his Complaint because it was not filed on the court-approved form and directed Plaintiff to file an amended complaint on a court-approved form, he examined the limited legal resources available in the prison's "lending library," was unable to find any useful information, and requested the prison paralegal's assistance to "help with rewriting" his Complaint on the court-approved form. (*Id*. at 5-6.)

Plaintiff contends that while he was waiting for a response from the paralegal, he "applied himself to the task" of preparing an amended complaint. (*Id*. at 6.) Plaintiff asserts that he was limited to 21 pages, but used up the majority of the pages because he had to "continue this case's long title from its cover-page" and had to devote a dozen pages to providing the Court with information regarding the Defendants and his prior lawsuits. (*Id*.) He contends he was left with only four pages "upon which to transfer all

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

- 4 -

of the allegations he had pleaded in his 28-page state-court Verified Complaint," something he "found much too far beyond his ability to do without help from someone trained in the law." (*Id*.)

Plaintiff asserts he "put himself at risk of having disciplinary charges preferred against him" and "canvass[ed] the reputed 'jailhouse lawyers'" in his prison to try to "find someone who possessed a sufficient amount of knowledge to be capable of helping him finish his [amended complaint] and who would be willing to violate prison rules prohibiting that activity," but he was unable to do so. (*Id*. at 7.) He alleges that when he spoke with the paralegal about assistance in rewriting his Complaint, she "expressed her bewilderment" about Plaintiff having to rewrite his 28-page complaint on a court-approved form with a 21-page limitation and recommended Plaintiff "simply rewrite all he had pleaded in his . . . Complaint onto [the court-approved] form with all of his extra pages as an addendum," file the document with the Court to meet his filing deadline, and send her a copy of the document to "'look at' afterwards." (*Id*. at 8-9.)

Plaintiff alleges he examined the legal resources available in the prison's lending library to find information about how to apply for the appointment of counsel, but was unable to find any useful information. (*Id*. at 7.) He states he had some very old research notes regarding the appointment of counsel, but they did not contain "any elaboration as to exactly what an indigent civil litigant's burdens of proof and persuasion might be to prevail" on an application for representation. (*Id*. at 7-8.) Plaintiff asserts he also requested assistance from the prison paralegal in preparing a motion for the appointment of counsel, but his request was "summarily denied." (*Id*. at 9.) He also claims he was unable to find a jailhouse lawyer "willing to risk being punished for violating th[]e prison rules." (*Id*.) Plaintiff contends that denying him legal resources and assistance from someone trained in the law is a violation of his right of access to the courts. (*Id*. at 10.)

Plaintiff asserts that under Ninth Circuit law, he bears the burden of showing "exceptional circumstances," which requires an evaluation of the likelihood of his success on the merits and his ability to articulate his claims pro se in light of the complexity of the

legal issues involved. (*Id*. at 11.) He alleges that he does not have access to legal opinions defining what constitutes a "likelihood of success on the merits" and, therefore, "cannot learn what his burdens of proof and persuasion are" and does not "know or have access to the legal resources to learn against what standards the Court will be measuring his prospects for success as 'likely' or 'unlikely.'" (*Id*. at 12.) Plaintiff claims he has no access to legal opinions or legal resources "which might give him some insight as to what he must do" to establish he is unable to articulate his claims pro se in light of the legal issues involved. (*Id*. at 12.) He contends his case is complex and involves claims against 22 defendants, including a corporate entity and 11 fictitiously named individuals. (*Id*. at 12-13.) Plaintiff alleges, however, that he does not have "access to any of the judicial opinions which he apprehends accord to him the constitutional rights he claimed were violated, or to any of those which identify the essential elements of those claims he must plead . . . to state a claim upon which relief can be granted." (*Id*. at 12.)

Plaintiff contends the Ninth Circuit's test "is a self-defeating circularity, commonly called a 'Catch-22.'" (*Id*. at 13.) He alleges that if he was able to prove he is likely able to succeed on the merits of his claims, then he would have proven the issues were not so complex that he could not continue litigating them on his own. (*Id*.) He asserts the Court should not limit itself to the Ninth Circuit's "inflexible test[,] which is set against insuperable and self-defeating standards," and should consider whether denying him counsel will "result in a fundamental unfairness impinging on due process protections." (*Id*. at 14.) Plaintiff contends that being denied meaningful access to the courts might constitutes "exceptional circumstances" warranting the appointment of (*Id*.)

### 2. Discussion

There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982). In proceedings in forma pauperis, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). As Plaintiff correctly notes, appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v.*

*Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims pro se in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that would require the appointment of counsel in this case. Plaintiff has been litigating in this Court since 1994 and has been able to state claims sufficiently to proceed past the screening stage on numerous occasions. The heart of Plaintiff's problem is not that he needs an attorney to help him, the paralegal may be unhelpful, there are limited legal resources at the prison, or no "jailhouse lawyer" is willing to violate the prison's policies to assist him. Rather, the problem is that Plaintiff is unwilling to revise his rambling two-count, 28-page Complaint into a document that can be meaningfully reviewed by the Court so it can fulfill the congressional mandate set forth in 28 U.S.C. § 1915A. Thus, the Court, in its discretion, will deny Plaintiff's Request.

### D.   Motion to Reset Deadline

Plaintiff requests the Court reset its deadline to file an amended complaint until after the Court rules on Plaintiff's Request for Court's Assistance. The Court, in its discretion, will grant the Motion to Reset Deadline.

In this Order, the Court has denied the Request for Court's Assistance. The Court will now give Plaintiff a **final opportunity** to file a first amended complaint on the court-approved form. As previously explained to Plaintiff, the court-approved form complaint is six pages long and both the form complaint and accompanying instructions permit him to attach no more than fifteen additional pages, for a total of 21 pages. In recognition of Plaintiff's lengthy litigation history and the Court's familiarity with it, the Court, in its discretion, **will not require Plaintiff to complete the "Previous Lawsuits" section (Section C) of the court-approved form**. This will provide Plaintiff with additional pages

to set forth his two claims. The Court will give Plaintiff until **May 17, 2021**, to file a first amended complaint in compliance with this Order.

### III. Warnings

#### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

#### B. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) The Judgment (Doc. 19) is **vacated**. The Clerk of Court must **reopen** this action.

(2) Plaintiff's "Motion to Reset Deadline for Filing Amended Complaint" (Doc. 20) is **granted**.

(3) Plaintiff's "Motion to Stay Proceedings" (Doc. 21) is **denied**.

(4) Plaintiff's "Request for Court's Assistance, Locating and Securing Representation for Plaintiff" (Doc. 22) is **denied**.

(5) Plaintiff has until **May 17, 2021**, to file a first amended complaint on a court-approved form in compliance with this Order. **No further extensions will be granted**.

. . . .

. . . .

. . . .

. . . .

. . . .

(6) If Plaintiff fails to file a first amended complaint in compliance with this Order **on or before May 17, 2021**, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice and deny any pending unrelated motions as moot.

Dated this 15th day of April, 2021.

James A. Teilborg
Senior United States District Judge