Kenneth W. Reed #108264
Name and Prisoner/Booking Number

ASPC - Tucson/Winchester
Place of Confinement

P.O. Box 24401
Mailing Address

Tucson, AZ 85734-4401
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

FILED _____ LODGED
RECEIVED _____ COPY

MAY 17 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Kenneth W. Reed
(Full Name of Plaintiff)
    Plaintiff,

vs.

(1) Trinity Services Group, Inc.
(Full Name of Defendant)
(2) Charles L. Ryan
(3) Ruben Montaño
(4) David Merriman
    Defendant(s).
☑ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV 21-00016 PHX JAT (CDB)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**
Jury Trial Demanded
☐ Original Complaint
☑ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
    ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
    ☐ Other: _____

2. Institution/city where violation occurred: Arizona State Prison's Central Unit, Florence, Arizona.

550/555

Revised 3/9/07

1

| | |
|---|---|
| (first name unknown) Jones | ) |
| (first name unknown) Gaye | ) |
| K. Muko | ) |
| L. Valisto | ) |
| P. Tuozzo | ) |
| (first name unknown) Barr | ) |
| (first name unknown) Urrea | ) |
| Pat Doe I (fictitiously named) | ) |
| Pat Doe II (fictitiously named) | ) |
| Pat Doe III (fictitiously named) | ) |
| Pat Doe IV (fictitiously named) | ) |
| Pat Doe V (fictitiously named) | ) |
| Pat Doe VI (fictitiously named) | ) |
| Pat Doe VII (fictitiously named) | ) |
| Pat Doe VIII (fictitiously named) | ) |
| Pat Doe IX (fictitiously named) | ) |
| Pat Doe X (fictitiously named) | ) |
| Pat Doe XI (fictitiously named) | ) |

**CIVIL RIGHTS COMPLAINT BY A PRISONER**

1-A

## B. DEFENDANTS

1. Name of first Defendant: __Trinity Services Group, Inc.__. The first Defendant is __a corporate entity under contract to feed prisoners throughout the Arizona Department of Corrections__.
   (Position and Title) — (Institution)

2. Name of second Defendant: __Charles L. Ryan__. The second Defendant is __a former director__ at __the Arizona Department of Corrections__.
   (Position and Title) — (Institution)

3. Name of third Defendant: __Ruben Montaño__. The third Defendant is employed as: __Chief Hearing Officer, Bureau of Administration__ at __Arizona Department of Corrections' Central Office__.
   (Position and Title) — (Institution)

4. Name of fourth Defendant: __David Merriman__. The fourth Defendant is employed as: __food and health services contracts monitor__ at __the Arizona State Prison's Florence Complex__.
   (Position and Title) — (Institution)

5. Name of 5th Defendant: __(first name unknown) Jones__. The 5th Defendant is employed as: __Kitchen operations supervisor__ at __the Arizona State Prison's Central Unit__.
   (Position and Title) — (Institution)

6. Name of 6th Defendant: __(first name unknown) Gaye__. The 6th Defendant is employed as: __correctional programs officer__ at __the Arizona State Prison's Florence Complex__.
   (Position and Title) — (Institution)

7. Name of 7th Defendant: __K. Muko__. The 7th Defendant is employed as: __correctional officer (prison guard)__ at __the Arizona State Prison's Central Unit__.
   (Position and Title) — (Institution)

8. Name of 8th Defendant: __L. Valisto__. The 8th Defendant is employed as: __correctional officer (prison guard)__ at __the Arizona State Prison's Central Unit__.
   (Position and Title) — (Institution)

9. Name of 9th Defendant: __P. Tuozzo__. The 9th Defendant is employed as: __correctional officer (prison guard)__ at __the Arizona State Prison's Central Unit__.
   (Position and Title) — (Institution)

10. Name of 10th Defendant: __(first name unknown) Barr__. The 10th Defendant is employed as: __Kitchen operations supervisor__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) — (Institution)

11. Name of 11th Defendant: __(first name unknown) Urrea__. The 11th Defendant is employed as: __correctional officer (prison guard)__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) — (Institution)

12. Name of 12th Defendant: __Pat Doe I__. The 12th Defendant is employed as: __a food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) — (Institution)

If you name more than 12 Defendants, answer the questions listed above for each additional Defendant on a separate page.

13. Name of 13th Defendant: __Pat Doe II__. The 13th Defendant is employed as: __food service worker__ at __Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

14. Name of 14th Defendant: __Pat Doe III__. The 14th Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

15. Name of 15th Defendant: __Pat Doe IV__. The 15th Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

16. Name of 16th Defendant: __Pat Doe V__. The 16th Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

17. Name of 17th Defendant: __Pat Doe VI__. The 17th Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

18. Name of 18th Defendant: __Pat Doe VII__. The 18th Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

19. Name of 19th Defendant: __Pat Doe VIII__. The 19th Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

20. Name of 20th Defendant: __Pat Doe IX__. The 20th Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

21. Name of 21st Defendant: __Pat Doe X__. The 21st Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

22. Name of 22nd Defendant: __Pat Doe XI__. The 22nd Defendant is employed as: __food service worker__ at __the Arizona State Prison's Central Unit__.
    (Position and Title) (Institution)

## C. PREVIOUS LAWSUITS

Requirement to complete this section was waived, pursuant to Court's Order dated April 15, 2021 [Doc. #24 at § D (pp. 7-8)].

## D. Causes of Action

### COUNT I

1. The following constitutional or other federal civil right has been violated by the Defendant(s): Right to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

2. Count I involves: (Check **only one**; if your claim involves more than one issue, each issue should be stated in a different count)
   ☐ Mail   ☐ Access to the court   ☐ Medical care
   ☐ Disciplinary proceedings   ☐ Property   ☐ Exercise of religion   ☐ Retaliation
   ☐ Excessive force by an officer   ☐ Threat to safety   ☒ Other: Necessities of life.

3. **Supporting Facts:** (State as briefly as possible the FACTS supporting Count I. Describe exactly what each Defendant did or did not do to violate your rights. State the facts clearly in your own words without citing legal authority or arguments).

   At all times relevant hereto, Plaintiff was in the custody of the Arizona Department of Corrections ("ADOC").

   At all times relevant hereto, Defendant Ryan was the director of the ADOC. By virtue of the authority vesting in his directorship of the ADOC, Defendant Ryan was the final policymaker for the State of Arizona regarding the manner in which her prisoners are kept and the conditions under which they are confined.

   At all times relevant hereto and attending upon his directorship of the ADOC, Defendant Ryan owned a duty to ensure that Arizona's prisoners being kept within and throughout the ADOC were provided adequate health care in keeping with prevailing standards of decency under the Eighth Amendment, as it was made applicable to the states under the Fourteenth Amendment to the United States Constitution. On some date which is of no actual consequence to these proceedings, Defendant Ryan exercised his lawful authority under A.R.S. § 31-201.01(D) to procure, for and on behalf of, and in the name of the State of Arizona, a contract under whose provisions Corizon Health, Inc. ("Corizon"), would provide health care and related services to the ADOC's prisoners (hereinafter referred to those parties' "Inmate Health Care Contract").

   At all times relevant hereto and attending upon his directorship of the ADOC, Defendant Ryan owned the responsibility to provide to Arizona's prisoners who were being kept within and throughout the ADOC, nutritionally adequate sustenance which would ensure their good health and physical fitness in keeping with prevailing standards of decency under the Eighth Amendment, as it was made applicable to the states under the Fourteenth Amendment to the United States Constitution.

   On some date which is of no actual consequence to these proceedings, Defendant Ryan exercised his lawful authority to procure, under the provisions of A.R.S. §§ 41-2501 et sequentia, for and on behalf of, and in the name of the State of Arizona, a contract under whose provisions Defendant Trinity Services Group, Inc. (hereinafter "Defendant Trinity"), would procure foodstuffs and prepare meals to feed the ADOC's prisoners (hereinafter referred to those parties' "Food Service Contract").

   Plaintiff was informed and believes, and therefore alleges that, under the terms of its Food Service Contract, Defendant Trinity agreed to provide daily sustenance to the ADOC's prisoners in adequate quantities, of hygienic and esculent quality, and with the nutritional values as would be necessary for their maintenance of good health and physical fitness in accordance with prevailing standards of decency under the Eighth and Fourteenth Amendments to the United States

4

Constitution.

Plaintiff was informed and believes, and therefore alleges that, under the terms of its Food Service Contract, Defendant Trinity agreed to comply with orders and directives issued by the ADOC's inmate health care contractor's practitioners and by the ADOC's chaplaincy, to prepare and deliver special diets — which the ADOC terms "Restricted Diets" — to all those of the ADOC's prisoners whose medical conditions and religious tenets require.

Plaintiff was informed and believes, and therefore alleges that, under the terms of its Food Service Contract, Defendant Trinity expressly agreed to abide by each and all of the ADOC's regulations and policies which govern institutional security, sanitation of food storage, preparation and service areas, and the preparation and delivery of meals to the ADOC's general population prisoners and to those others of the ADOC's prisoners who require Restricted Diets. More specifically and with painful relevance to these pleadings, Plaintiff was also informed and believes, and therefore alleges further that Defendant Trinity agreed to comply with the provisions contained in the ADOC's Department Order 912 and its companion Food Service System Technical Manual 912-T-OPS, the ADOC's Restricted Diets Manual and its corresponding Restricted Diets menus, which are variously arrayed in spreadsheet form by gender, for juveniles and adults, and according to security custody level.

Plaintiff was informed and believes, and therefore alleges that, at all times relevant hereto and attending upon his directorship of the ADOC, Defendant Ryan served, either by express nomination or constructively, as the executor of the Food Service Contract and therefore owed concomitant obligations to both the State of Arizona and the collective all of the ADOC's prisoners, including the Plaintiff, to ensure Defendant Trinity's full compliance therewith. In order to facilitate the fulfillment of his executory obligations, Defendant Ryan formulated and promulgated, and caused to be implemented throughout the ADOC, Department Order 912 and Food Service System Technical Manual 912-T-OPS, by and through which he delegated to and conferred upon wardens and food service contract liaisons at the prison complex level, and to deputy wardens and facility administrators at the unit level, the responsibility and his full authority for monitoring and, whenever necessary, for compelling Defendant Trinity's compliance with the Food Service Contract.

Responsibility for monitoring Defendant Trinity's compliance with the Food Service Contract at mealtimes is further delegated by wardens, deputy wardens and facility administrators to their subordinates, most usually correctional officers who, at the actual time and place of meal service are responsible for ensuring that each meal contract food service workers deliver to an inmate is fully compliant with menu and food service specifications, such as, the presence of all integrants, the correctness of portion sizes, food temperature, and overall fitness for consumption. According to protocol, which is not anywhere written in policy or regulation, but which Plaintiff attests has been observed without the slightest variance at every prison facility to which he had ever been assigned during the past 25 years, any discrepancy regarding the correctness of a meal, discovered by the inmate, must be immediately shown to the supervising staff member who, in turn, must return the meal in its entirety to the contract food service worker for correction or replacement; else acceptance of an uncorrected meal constitutes that inmate's irrevocable abandonment of any objection he or she had, or might have asserted regarding its shortcomings.

At all times relevant hereto and throughout the several years before, Plaintiff was suffering from some unknown dietary/gastrointestinal malady, which had caused him an unwanted weight loss of more than 40 pounds from what had been his normal weight of around 165 pounds, but which Corizon and its medical providers had been taking an altogether haphazard and insoucient approach towards diagnosing.

At all times relevant hereto, Plaintiff's Body Mass Index ("BMI") was less than $18.50 \text{ kg/m}^2$. Pursuant

5

to Rules 201(c)(2) and (d)(2), Federal Rules of Evidence, Plaintiff requests the Court to judicially notice that the United States Institutes for Health, the United States Centers for Disease Control and Prevention, and the United Nations World Health Organization all recognize a BMI of 18.50 kg/m² and less as "Underweight."

On June 7, 2018, at the ADOC's East Unit in Florence, Arizona, one of Corizon's medical providers who was affecting to address the Plaintiff's still undiagnosed dietary/gastrointestinal disorder and was hoping to arrest the Plaintiff's weight loss, issued a Restricted Diet Order with her expectation that the ADOC and Defendant Trinity would thenceforth provide to the Plaintiff (a) an enhanced calorie "Wasting Syndrome Diet," (b) a "Liquid [Nutritional] Supplement" twice daily, and (c) AM, Mid-day and Bedtime Snacks (hereinafter referred to as the Plaintiff's "June 7, 2018, RDO").

Following issuance of his June 7, 2018, RDO, and throughout the remainder of his residency at the East Unit, Plaintiff occasioned no complaint worthy of note regarding meal service against Defendant Trinity or its employees: Each and all of the food service discrepancies that occurred from time to time were corrected to his satisfaction according to established meal service protocol, as was more fully described herein, supra.

On August 8, 2018, after the Plaintiff had gone to the East Unit's inmate health clinic for a regularly scheduled weight-check, nursing staff there attending measured and recorded the Plaintiff's weight as having declined to 112 pounds which corresponds to a BMI of 16.54 kg/m².

On August 9, 2018, one of Corizon's regional medical directors submitted an emergency transfer order for the Plaintiff to be taken to and interned at one of the ADOC's infirmaries known as Housing Unit 8 (hereinafter referred to as "HU-8").

On August 10, 2018, Plaintiff was transferred from the ADOC's East Unit to its HU-8, which is situated within the confines of the ADOC's Central Unit. The ADOC's Central Unit is one of the six prison facilities whose operations are under the governance of the Arizona State Prison's Florence Complex.

At all times relevant hereto, Defendant Merriman served as Defendant Ryan's liaison at the Florence Complex to monitor Defendant Trinity's performance under the Food Service Contract and to act with Defendant Ryan's full powers and authority to enforce its terms and conditions.

At all times relevant hereto, Defendant Montaño served as Defendant Ryan's duly appointed agent in situ at the Central Unit to monitor Defendant Trinity's performance under the Food Service Contract and to act with Defendant Ryan's full powers and authority, either upon his own initiative or in concert with Defendant Merriman as circumstances warranted, to demand strict adherence to its terms and conditions and to require correction of all deficiencies discovered.

At all times relevant hereto, that is, all the while Plaintiff was interned at HU-8, the exact title of the spreadsheet upon which were arrayed the menu specifications for all of the ADOC's Restricted Diets, including the Plaintiff's Wasting Syndrome Diet, was the "Arizona DOC Male Level 3-4 Diets [Menus]" (hereinafter referred to as the "RD Menus Spreadsheet").

Between August 10 and 14, and at breakfast on August 15, 2018, none of the 13 meals provided to the Plaintiff was fully compliant with his June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. As was his wonted practice at meal service, Plaintiff reported those discrepancies to the officers who were conducting meal service. For eight of those meals the officers corrected the deficiencies by giving the Plaintiff extras from unclaimed meals. Hence, none of those discrepancies, which had been corrected in this manner, was reported to supervisory staff in the kitchen or to Defendant Trinity's food service workers; and because those discrepancies were not reported, no corrective action was taken to prevent their recurrence. For the other five of those 13 incompliant meals the officers who were conducting meal service supposedly "called the kitchen"

to have Defendant Trinity's food service workers correct the deficiencies. On only one of those five occasions did Defendant Trinity's food service workers send a corrected meal. But, as to those other four meals, either the officers conducting meal service lied to the Plaintiff about their having called someone at the kitchen to report the complained of discrepancies, or Defendant Trinity's food service workers simply chose to ignore those problems reported. Hence, Plaintiff was duped into accepting those four incorrectly prepared meals on empty promises of their being soon corrected.

At or around noon on August 15, 2018, Plaintiff accosted a supervisory staff member whom he apprised of the 13 meals that he had been given since his arrival at HU-8 and which were all variously incompliant with his June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual; notably, and especially those four meals which were not corrected and which he had been duped into accepting. Although that supervisory staff member whom Plaintiff had accosted and to whom Plaintiff was complaining promised to "mention" the Plaintiff's concerns to "kitchen staff," he roundly admonished the Plaintiff for his failure to follow established protocol at meal service which, he explained, was the same at the Central Unit as all elsewhere throughout the ADOC: That any and all discrepancies found with a meal must be immediately reported to the officer conducting meal service who then becomes responsible for returning the entire meal to Defendant Trinity's food service workers for correction, and who, in the event the meal is not promptly corrected or replaced, must also write what he called an "IR" (Information Report) to document Defendant Trinity's failure to adhere to the terms of its Food Service Contract; else, Plaintiff's acceptance of any supposedly incompliant meal would be deemed— as was apparently done since his transfer there to HU-8 — a waiver of any complaint he might have had about its deficiencies. After having been condignly admonished, Plaintiff acknowledged and apologized for his remissness; that is, for his having been lulled by the more relaxed atmosphere in HU-8 and for his having neglected to adhere to this well established protocol, of which he was already thoroughly acquainted.

For lunch on August 15, 2018, Defendant Trinity's food service worker, Defendant Pat Doe I, prepared and sent to Defendant Muko, for him to serve to the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Muko presented that meal to the Plaintiff, Plaintiff described to Defendant Muko exactly what its shortcomings were, refused its acceptance and requested that it be corrected or replaced. Defendant Muko first attempted to bully the Plaintiff into taking that meal being offered, deficiencies notwithstanding. After a brief, although, acrimonious argument, Defendant Muko relented and condescended to "call the kitchen" about the Plaintiff's complaint. For his or her response to Defendant Muko's call, Defendant Pat Doe I eventually prepared and sent a different meal, which Defendant Muko presented to the Plaintiff, but which was also incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. Whereupon, Plaintiff refused to accept this other meal and asked Defendant Muko to report its discrepancies, which the Plaintiff identified with particularity, to Defendant Pat Doe I and request that a corrected or a replacement meal be sent. However, as he had done before, Defendant Muko tried to bully the Plaintiff into accepting that second, incorrectly prepared meal. Plaintiff refused to be bullied into accepting the meal that Defendant Muko was trying to force him to take, insisting all the while that Defendant Muko notify Defendant Pat Doe I of its discrepancies and to request correction or replacement. Although he does not know whether Defendant Muko ever called Defendant Pat Doe I again, Plaintiff does know that he never received any corrected or replacement meal and, hence, had nothing to eat for the remainder of that afternoon. Wherefore, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Muko never called Defendant Pat Doe I this second time to report the

discrepancies the Plaintiff had described and to request their correction; else, in the alternative, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Muko did indeed notify Defendant Pat Doe I of the complained of discrepancies, but that Defendant Pat Doe I did not deign to take any corrective action.

For dinner on August 15, 2018, Defendant Trinity's food service worker, Defendant Pat Doe II, prepared and sent to Defendant Valisto, for him to serve to the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Valisto presented that meal to the Plaintiff, Plaintiff described to Defendant Valisto exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. Although he does not know whether Defendant Valisto ever notified Defendant Pat Doe II of those discrepancies that the Plaintiff had reported to him, Plaintiff does know that he never received any corrected or replacement meal and, hence, had nothing to eat for the remainder of the day. Wherefore, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Valisto never called Defendant Pat Doe II to report the discrepancies the Plaintiff had described to him and to request their correction; else, in the alternative, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Valisto did indeed notify Defendant Pat Doe II of the complained of discrepancies, but that Defendant Pat Doe II did not deign to take any corrective action.

For breakfast on August 16, 2018, Defendant Trinity's food service worker, Defendant Pat Doe III, prepared and sent to Defendant Muko, for him to serve to the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Muko presented that meal to the Plaintiff, Plaintiff described to Defendant Muko exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. Although he does not know whether Defendant Muko ever notified Defendant Pat Doe III of those discrepancies that the Plaintiff had reported to him, Plaintiff does know that he never received any corrected or replacement meal and, hence, had nothing to eat throughout that morning. Wherefore, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Muko never called Defendant Pat Doe III to report the discrepancies the Plaintiff had described to him and to request their correction; else, in the alternative, Plaintiff would allege hypothetically and subject to his ability to prove at trial, that Defendant Muko did indeed notify Defendant Pat Doe III of the complained of discrepancies, but that Defendant Pat Doe III chose not to take any corrective action.

On August 16, 2018, Plaintiff wrote an Inmate Letter to Defendant Montaño to inform him of the food service discrepancies that had occurred at lunch and dinner on August 15, 2018, and at breakfast earlier that same day, August 16, 2018, and that, because no corrective action was taken, he was not fed those three meals. Defendant Montaño never answered the Plaintiff's August 16, 2018, Inmate Letter. Nor did Defendant Montaño deign to take any corrective action.

For breakfast on August 17, 2018, Defendant Trinity's food service worker, Defendant Pat Doe IV, prepared and sent to Defendant Muko, for him to serve to the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Muko presented that meal to the Plaintiff, Plaintiff described to Defendant Muko exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. Defendant Muko first attempted to bully the Plaintiff into accepting the meal, insisting that it was, in all respects, fully compliant with "food service policy," which he did not identify. During the acrimonious argument that ensued, Defendant Muko admitted never having seen the RD Menus Spreadsheet or the ADOC's Restricted Diets Manual, but, nevertheless, insisted that that

meal he was trying to get the Plaintiff to accept, was fully compliant with them both. At the conclusion of this argument, after Plaintiff stood fast against Defendant Muko's bullying, refused to accept that incompliant meal being offered and insisted that it be corrected or replaced, Defendant Muko hotly refused to call anyone in the kitchen about the Plaintiff's complaint. Defendant Muko's last words on this matter were expressed in terms of an implied threat of disciplinary action being brought against the Plaintiff: That he would be summoning his supervisor to address the Plaintiff's uncooperative behavior. True to his word, Defendant Muko did not notify Defendant Pat Doe IV of the food service discrepancies that the Plaintiff had just reported to him; hence, Plaintiff had nothing to eat throughout that morning. However untrue to Defendant Muko's other words, no supervisory staff member ever came to speak to the Plaintiff; hence, Plaintiff had no opportunity to advise supervisory staff that he had not been fed any breakfast because of Defendant Muko's bullying tactics and stubborn refusal to notify the morning shift's food service worker, viz., Defendant Pat Doe IV, of the incorrectly prepared meal that he or she had sent.

For lunch on August 17, 2018, Defendant Trinity's food service worker, Defendant Pat Doe V, prepared and sent to Defendant Muko, for him to serve to the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Muko presented that meal to the Plaintiff, Plaintiff described to Defendant Muko exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. Just as he had done on several prior occasions, Defendant Muko attempted to bully the Plaintiff into accepting that incorrectly prepared meal, insisting that it was fully compliant with "food service policy," which he did not identify, and which he (as he had so admitted mere hours earlier) had never seen. Plaintiff resisted being bullied, did not accept that incorrectly prepared meal and insisted that it be corrected or replaced. Although he does not know whether Defendant Muko ever relented and notified Defendant Pat Doe V of those discrepancies that the Plaintiff had reported to him, Plaintiff does know that he never received any corrected or replacement meal and, hence, had nothing to eat throughout that afternoon. Wherefore, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Muko never contacted Defendant Pat Doe V to report the discrepancies the Plaintiff had described to him and to request their correction; else, in the alternative, Plaintiff would allege hypothetically and subject to his ability to prove at trial, that Defendant Muko did indeed notify Defendant Pat Doe V of the discrepancies, but that Defendant Pat Doe V chose not to take any corrective action.

For "brunch" on August 18, 2018, which was a supposedly enhanced breakfast in lieu of a separately served breakfast and lunch, Defendant Trinity's food service worker, Defendant Pat Doe VI, prepared and sent to Defendant Gaye, for him to serve to the Plaintiff, a meal that was altogether incompliant with the Plaintiff's June 7, 2018, RDO, and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Gaye presented that meal to the Plaintiff, Plaintiff described to Defendant Gaye exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. Defendant Gaye unhesitatingly lied to the Plaintiff about his having already spoken to kitchen staff about the wrongness of that meal, but did not say to whom he had spoken or how he could have known what its discrepancies were before the Plaintiff just then mentioned them. Defendant Gaye then endeavored to bully the Plaintiff into accepting this incorrectly prepared meal saying that meal service is a "take it or leave it proposition"; also refusing to call the kitchen to bother food service staff about this problem, which he attributed to the Plaintiff's imagination. Plaintiff withstood Defendant Gaye's bullying, refused to accept that incorrectly prepared meal and insisted that Defendant Trinity's food service worker, who would have been on that day Defendant Pat Doe VI, be notified of the deficiencies so that he or she could make the necessary correction. A short while later and despite his earlier refusal to "bother" food service staff about this problem, Defendant Gaye claimed to have called the kitchen and to have spoken with one of

Defendant Trinity's food service workers, whom he did not name but who would likely have been Defendant Pat Doe VI, and who disclaimed that this morning's brunch was incorrectly prepared. Whereafter, Defendant Gaye delivered some completely different meal, which the Plaintiff recognized as fare served to general population inmates (i.e., not a special diet) and abandoned it there on the floor in the Plaintiff's assigned bedspace. Whereupon, Plaintiff returned this second meal to Defendant Gaye at his post, described exactly in what respects it was incompliant with his June 7, 2018, RDO and the RD Menus Spreadsheet and the ADOC's Restricted Diets Manual, and insisted that it be returned to the kitchen for Defendant Pat Doe VI to examine and, after verifying what all was wrong with it, to either correct or replace. Although Plaintiff does not know whether Defendant Gaye ever returned that second meal to Defendant Pat Doe VI, Plaintiff does know that he never received any corrected or replacement meal and, hence, had nothing to eat throughout that day until dinner was served. Wherefore, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Gaye did not return that second meal to Defendant Pat Doe VI or otherwise communicate with Defendant Pat Doe VI about the discrepancies Plaintiff had described to him and to request their correction; else, in the alternative, Plaintiff would allege hypothetically and subject to his ability to prove at trial, that Defendant Gaye did indeed apprise Defendant Pat Doe VI of the discrepancies, but that Defendant Pat Doe VI simply chose not to take any corrective action.

For "brunch" on August 19, 2018, which was a marginally enhanced breakfast in lieu of a separately served breakfast and lunch, Defendant Trinity's food service worker, Defendant Pat Doe VII, prepared and sent to Defendant Tuozzo, for him to serve to the Plaintiff an altogether wrong meal: Instead of the Wasting Syndrome Diet that the Plaintiff was prescribed, Defendant Pat Doe VII had prepared and sent a Controlled Protein Diet which, in all respects, was different from and, hence, incompliant with the Plaintiff's June 7, 2018, RDO and the RD Menus Spreadsheet and the ADOC's Restricted Diets Manual. When Defendant Tuozzo presented that meal to the Plaintiff, Plaintiff refused its acceptance, explained how it was all wrong and asked that it be replaced. After first trying to persuade the Plaintiff to accept that wrong meal, Defendant Tuozzo finally condescended to call the kitchen. After making a telephone call, Defendant Tuozzo reported having spoken to Defendant Barr, who was supposedly a kitchen supervisor and who had supposedly said he would soon be coming to retrieve the Controlled Protein Diet meal and to verify against the Plaintiff's Restricted Diet Card that the Plaintiff was, as he claimed, prescribed a Wasting Syndrome Diet. However, despite the Plaintiff's numerous inquiries throughout the morning and early afternoon about Defendant Barr's having not shown up, and requests to call the kitchen again for to speak directly to Defendant Pat Doe VII, Defendant Tuozzo kept assuring the Plaintiff that Defendant Barr was indeed still coming and refused to make a second call to the kitchen; and yet, even after learning that Defendant Barr had either left work early or been posted to other duties, Defendant Tuozzo still would not make a second telephone call to the kitchen to speak directly to Defendant Pat Doe VII. Instead of making any follow-up inquiry as the Plaintiff had been importuning him to do, Defendant Tuozzo advised the Plaintiff to address this meal service problem with the officer who was going to be posted to replace him on the next shift, as one more knowledgeable about kitchen operations and more experienced with resolving food service problems. However, when Plaintiff made his inquiry about this problem (i.e., his having not been fed) to the officer on the next shift who relieved Defendant Tuozzo, that officer disclaimed his having been briefed regarding this situation by Defendant Tuozzo, found no mention of Plaintiff's food service complaint written in that day's Correctional Service Log and was unable to locate the Controlled Protein Diet trays that Defendant Tuozzo had taken to his post to await Defendant Barr's arrival. Having never received any replacement meal throughout that day, Plaintiff had had nothing to eat from when he received his dinner the previous day until dinner was served that evening.

For lunch on August 22, 2018, Defendant Trinity's food service worker, Defendant Pat Doe VIII, prepared and sent to Defendant Tuozzo, for him to serve the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Tuozzo presented that meal to the Plaintiff, Plaintiff described to Defendant Tuozzo exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. Although he does not know whether Defendant Tuozzo ever notified Defendant Pat Doe VIII of those discrepancies that the Plaintiff had reported to him, Plaintiff does know that he never received any corrected or replacement meal and, hence, had nothing to eat throughout that afternoon. Wherefore, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Tuozzo never contacted Defendant Pat Doe VIII to report the discrepancies the Plaintiff had described to him and to request their correction; else, in the alternative, Plaintiff would allege hypothetically and subject to his ability to prove at trial, that Defendant Tuozzo did indeed inform Defendant Pat Doe VIII of the reported discrepancies, but that Defendant Pat Doe VIII chose not to take any corrective action.

On August 24, 2018, Plaintiff wrote an Inmate Letter to Defendant Montaño to inform him of the food service discrepancies that had occurred at breakfast and lunch on August 17, 2018, at brunch on August 18, 2018, at brunch on August 19, 2018, and at lunch on August 22, 2018, and that, because no corrective action had been taken, he was not fed those five meals. Defendant Montaño never answered the Plaintiff's August 24, 2018, Inmate Letter. Nor did Defendant Montaño deign to take any corrective action.

Also on August 24, 2018, Plaintiff wrote an Inmate Letter to Defendant Merriman to inform him of the food service discrepancies that had occurred at lunch and dinner on August 15, 2018, at breakfast on August 16, 2018, at breakfast and lunch on August 17, 2018, at brunch on August 18, 2018, at brunch on August 19, 2018, and at lunch on August 22, 2018, and that, because no corrective action had been taken, he was not fed those eight meals. Defendant Merriman never answered the Plaintiff's August 24, 2018, Inmate Letter. Nor did Defendant Merriman deign to take any corrective action.

For dinner on August 25, 2018, Defendant Trinity's food service worker, Defendant Pat Doe IX, prepared and sent to a Ms. Williams-Hancock, for her to serve the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Ms. Williams-Hancock presented that meal to the Plaintiff, Plaintiff described to her exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. After she confirmed that the Plaintiff's meal had been incorrectly prepared, Ms. Williams-Hancock returned it to the kitchen and made a telephone call there, purposing to speak with Defendant Pat Doe IX. However, Defendant Jones intercepted Ms. Williams-Hancock's telephone call and refused to allow her to speak with Defendant Pat Doe IX directly. During that telephone conversation, to which Plaintiff was made privy, Defendant Jones flatly denied that anything was wrong with the meal that Defendant Trinity's food service worker, viz., Defendant Pat Doe IX, had prepared for the Plaintiff and sent, because, as she explained, the Central Unit was a restricted-movement, maximum custody facility where its deputy warden, viz., Defendant Montaño, had directed Defendant Trinity to reduce portion sizes for all meals being served; hence, the Plaintiff's enhanced-calorie Wasting Syndrome Diet became, after downsizing, exactly the same fare as what all other general population inmates are served. Despite the sincerity of her disbelief regarding Defendant Jones' explanation, Ms. Williams-Hancock was stymied: Having already returned the Plaintiff's incorrectly prepared meal to the kitchen, and having been prevented from communicating with Defendant Pat Doe IX directly, and having received no replacement meal from the kitchen, she could not get the Plaintiff fed. Because he had had nothing to eat since breakfast and was not fed anything for this dinner, Plaintiff went without having anything to eat until

breakfast the next morning.

Also on August 25, 2018, Plaintiff wrote an Inmate Letter to Defendant Montaño to inform him of the food service problem that had occurred earlier that day at dinner and to complain that, because no corrective action had been taken, he was not fed that meal. Defendant Montaño never answered the Plaintiff's August 25, 2018, Inmate Letter. Nor did Defendant Montaño take any corrective action.

And yet, a very short while later on August 25, 2018, Plaintiff wrote an Inmate Letter to Defendant Merriman to inform him of the food service problem that had occurred earlier that day at dinner and to complain that, because no corrective action had been taken, he was not fed that meal. Defendant Merriman never answered the Plaintiff's August 25, 2018, Inmate Letter. Nor did Defendant Merriman ever take any corrective action.

For lunch on August 29, 2018, Defendant Trinity's food service worker, Defendant Pat Doe X, prepared and sent to Defendant Urrea, for him to serve the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Urrea presented that meal to the Plaintiff, Plaintiff described to him exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. Although he does not know whether Defendant Urrea ever notified Defendant Pat Doe X of those discrepancies that the Plaintiff had reported to him, Plaintiff does know that he never received any corrected or replacement meal and, hence, had nothing to eat throughout that afternoon. Wherefore, Plaintiff alleges hypothetically and subject to his ability to prove at trial, that Defendant Urrea never contacted Defendant Pat Doe X to report the discrepancies the Plaintiff had described to him and to request their correction; else, in the alternative, Plaintiff would allege hypothetically and subject to his ability to prove at trial, that Defendant Urrea did indeed apprise Defendant Pat Doe X of the reported discrepancies, but that Defendant Pat Doe X chose not to take any corrective action.

For breakfast on August 31, 2018, Defendant Trinity's food service worker, Defendant Pat Doe XI prepared and sent to Defendant Muko, for him to serve to the Plaintiff, a meal that was incompliant with the Plaintiff's June 7, 2018, RDO and/or the RD Menus Spreadsheet and/or the ADOC's Restricted Diets Manual. When Defendant Muko presented that meal to the Plaintiff, Plaintiff described to him exactly what its shortcomings were, refused its acceptance and asked that it be corrected or replaced. However, Defendant Muko flatly refused to call Defendant Pat Doe XI or anyone else to report the discrepancies of which the Plaintiff had complained; and because Plaintiff's meal was returned to the kitchen without any request for corrective action having been called for, no corrected or replacement meal was ever returned. Hence, Plaintiff had nothing to eat throughout that morning.

On September 2, 2018, Plaintiff wrote an Inmate Letter to inform Defendant Montaño of the food service discrepancies that had occurred at lunch on August 29, 2018, and at breakfast on August 31, 2018, and to complain that, because no corrective action had been taken, he was not fed those two meals. Defendant Montaño never answered the Plaintiff's September 2, 2018, Inmate Letter. Nor did Defendant Montaño ever take any corrective action.

Also on September 2, 2018, Plaintiff wrote an Inmate Letter to inform Defendant Merriman of the food service discrepancies that had occurred at lunch on August 29, 2018, and at breakfast on August 31, 2018, and to complain that, because no corrective action had been taken, he was not fed either of those two meals. Defendant Merriman never answered the Plaintiff's September 2, 2018, Inmate Letter. Nor did Defendant Merriman ever take any corrective action.

On September 3, 2018, Plaintiff was discharged from HU-8, pending issuance of a transfer order and to await the availability of transportation. When Plaintiff's vital signs were measured and recorded that morning, Plaintiff's weight was 109 pounds, which corresponds to a BMI of 16.09 kg/m².

  Pursuant to Rule 201(c)(2), Federal Rules of Evidence, Plaintiff requests the Court to judicially notice that the United States Institutes for Health, the United States Centers for Disease Control and Prevention, and the United Nations World Health Organization all recognize a BMI of 16.00 kg/m² and less as "Severely Underweight."

  On September 4, 2018, Plaintiff was transferred from HU-8, and returned to the ADOC's East Unit from whence he had been brought 25 days earlier.

  During those 25 days the Plaintiff was interned at HU-8, the Plaintiff was not fed 11 meals; twice having had to endure not being fed for 24 hours or longer.

  Notwithstanding Plaintiff's having exactly identified herein which of 11 meals he was not fed, many of those other meals served to the Plaintiff during his 25-day internment at HU-8 were, to some lesser degree, also incompliant with the ADOC's RD Menus Spreadsheet, whose deficiencies the Plaintiff reserves the right to present to a jury as additional evidence of the Defendants' wrongs and of the harms they caused. That the Plaintiff did not follow established protocols, to complain about those numerous other discrepancies at meal service will be evidence of the coercive effect hunger had upon him and of his avoidance of the risk of his not being fed again and again and again.

  Plaintiff infers and believes, and therefore alleges that Defendants Ryan, Merriman and Montaño all knew, or reasonably should have known that Defendant Trinity was not fulfilling its obligations to feed the ADOC's prisoners in conformance with the terms and conditions of its Food Service Contract, but, notwithstanding, failed to take the necessary corrective action.

  Plaintiff infers and believes further, and therefore alleges also that Defendants Ryan's, Montaño's and Merriman's failures to demand strict adherence to the Food Service Contract was attributable, in part, to their own disregard, but, otherwise, to their failures to adequately train their subordinates, to whom they had delegated their authority to monitor Defendant Trinity's performance.

  As a direct and proximate result of the Defendants' acts and omissions, Plaintiff suffered 25 days of near constant hunger, sometimes unbearably extreme, fatigue and lassitude, lapses in mental acuity and, given his already emaciated condition, a perilous three-pound weight loss.

  At no time relevant hereto was depriving the Plaintiff adequate sustenance, as a condition of his imprisonment, related to any legitimate governmental interest, or justified by any overriding security concern or penological objective.

  For their failure to provide the Plaintiff nutritionally adequate sustenance throughout his internment at HU-8, which was the cause of the harms that are more fully described herein, the Defendants subjected the Plaintiff to cruel and unusual conditions of his confinement and did so deny him the protection he must be accorded under the Eighth Amendment, which is made applicable to the states under the Fourteenth Amendment to the United States Constitution.

4. **Injury:** (State how you have been injured by the actions or inactions of the Defendant(s)).
Extreme and near constant hunger for 25 days, fatigue and lassitude, lapses in mental acuity, difficulty with accomplishing ordinary tasks and with participating in wonted activities, worsening of preexisting dietary/gastrointestinal condition and, despite an already emaciated condition, a three-pound weight loss.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count _I_?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count _I_ to the highest level?  ☐ Yes  ☒ No
   d. If you did not submit or appeal a request for administrative relief to the highest level, briefly explain why you did not. Arizona Department of Corrections' policy, Department Order 802, Inmate Grievance Procedure, does not permit appeal of a medical grievance.

14

## COUNT II

1. State the constitutional or other federal civil right that was violated: <u>Right to be free of cruel and unusual punishment under the Eighth Amendment to the United States Constitution.</u>

2. **Count II** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. Supporting Facts. State as briefly as possible the FACTS supporting Count II Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Plaintiff incorporates herein by reference thereto, each and all of the averments which are contained in Count I ante.
   For their failure to adhere to the dietary regimen that was duly prescribed by one of Corizon's medical providers, which was the cause of the harms that are more fully described herein, which led to a worsening of the Plaintiff's dietary/gastrointestinal condition, the Defendants were deliberately indifferent to the Plaintiff's serious medical needs and did thusly violate the Plaintiff's right to be free of cruel and unusual punishment, as that right is guaranteed to him under the Eighth Amendment, and is made applicable to the states under the Fourteenth Amendment to the United States Constitution.

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).
   Extreme and near constant hunger for 25 days, fatigue and lassitude, lapses in mental acuity, difficulty with accomplishing ordinary tasks and with participating in wonted activities, worsening of preexisting dietary/gastrointestinal condition and, despite an already emaciated condition, a three-pound weight loss.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☐ Yes ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. <u>Arizona Department of Corrections' policy, Department Order 802, Inmate Grievance Procedure, does not permit appeal of a medical grievance.</u>

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

## E. REQUEST FOR RELIEF

State briefly exactly what you want the Court to do for you.

Plaintiff prays that the Court will —

    A. award to him compensatory damages of $60,000.00;
    B. award to him punitive damages in an amount which will be just and proper;
    C. award to him his costs and all other expenses he has incurred, and will be incurring for his having had to bring and prosecute this action to include, although, without limitation —
        1. filing fees and other court costs,
        2. costs of service of process,
        3. attorneys' fees, and
        4. all other incidental expenses, such as, photocopying costs, notarial fees and postage;
and
    D. grant to him any other type of relief which the nature of this case may require, and which would be just and proper under the circumstances presenting.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    May 7, 2021
                 DATE

*Kenneth W. Reed*
SIGNATURE OF PLAINTIFF
Kenneth W. Reed

(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


(Signature of attorney, if any)


(Attorney's address & telephone number)

### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If needed, you may attach no more than fifteen additional pages. The form, however, must be completely filled in to the extent applicable.

16

## CERTIFICATE OF FILING AND SERVICE

Given to prison mailroom personnel this date for mailing, in accordance with prison policy and established institutional procedures, will be an envelope which is correctly addressed to the Clerk of the United States District Court for the District of Arizona, and which will contain, possibly among other things, the original and two copies of the foregoing First Amended Complaint. Plaintiff intends for, and expects that the Clerk of Court will file this original document upon receipt, deliver a copy to the assigned judge, and return to him the extra copy, conformed.

~~Also given to prison mailroom personnel this date for mailing, in accordance with prison policy and established institutional procedures, will be another envelope which will contain, possibly among other things, one copy of the foregoing First Amended Complaint, and which is addressed to:~~

Messrs. Randy J. Aoyama and Bradley L. Dunn
Attorneys at Law
Hinshaw & Culbertson, L.L.P.
2375 E. Camelback Rd., Suite 750
Phoenix, AZ 85016
Attorneys for Defendants Trinity Services Group, Inc., and Merriman

**OPPOSING PARTIES NOT SERVED**

By: _____
Date: _____

Plaintiff's request to purchase the correct number of copies required for filing and service of this document was overruled by the Arizona Department of Corrections' paralegal, Betty Ulibarri-Ruiz, who is either too stupid to add two plus one plus one and arrive at a sum of four, or otherwise endeavoring to sabotage the Plaintiff's prosecution of this cause.

By: *Kenneth W. Reed*
Date: May 13, 2021