SH

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth W. Reed,<br><br>              Plaintiff,<br><br>v.<br><br>Trinity Services Group Incorporated, et al.,<br><br>              Defendants. | No.   CV 21-00016-PHX-JAT (CDB)<br><br>**ORDER** |

Plaintiff Kenneth W. Reed, who is currently confined in Arizona State Prison Complex-Tucson, Winchester Unit, brought this civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 25.)  Defendants Merriman and Montaño move for summary judgment (Doc. 155), and Plaintiff did not respond, despite being granted additional time to do so (*see* Doc. 168 (giving Plaintiff until September 2, 2022 to respond to the Motion for Summary Judgment)).[1]  Defendant Muko joins in the Motion for Summary Judgment.  (Doc. 212.)

**I.      Background**

On screening Plaintiff's First Amended Complaint (Doc. 25) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment deliberate indifference claims against Defendants Montaño, Merriman, Gaye, Muko, and Tuozzo based on their alleged failure in August 2018 to ensure that Plaintiff received all of his meals as required under the food service contract between the Arizona Department of

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Doc. 157.)

Corrections (ADC) and Trinity Services Group. (Doc. 27 at 12.) The Court directed them to answer and dismissed the remaining claims and Defendants. (*Id.* at 12, 18.) Thereafter, the Court dismissed Defendants Gaye and Tuozzo without prejudice for failure to timely serve. (Docs. 125, 162.)

Defendants Montaño and Merriman now move for summary judgment and argue that Plaintiff did not exhaust the available administrative remedies, they were not deliberately indifferent to Plaintiff's health and safety, and they are entitled to qualified immunity. (Doc. 155.) Defendant Muko joins in the motion. (Doc. 212.) Because Plaintiff did not file a response or controverting statement of facts, the Court will consider Defendants' facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified First Amended Complaint or other evidence on the record. Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Exhaustion**

    **A. Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available

administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**B.    ADC Grievance Process**

During the relevant time period of Plaintiff's claims, ADC Department Order (DO) 802 (eff. Oct. 16, 2016), governed the prisoner grievance procedure. (Doc 156 (Defs.' Statement of Facts) ¶ 22.) DO 802 sets forth the process that prisoners are required to follow to complete the ADC's grievance procedure. (*Id.*) The grievance procedure "is designed to address inmate complaints related to any aspect of institutional life or condition of confinement which directly and personally affects the inmate grievant[.]" (*Id.* ¶ 23.)

DO 802 requires that the prisoner must first attempt to resolve any "complaints through informal means including, but not limited to, discussion with staff in the area most responsible for the complaint or through the submission of an Inmate Informal Complaint Resolution, Form 802-11." (*Id.* ¶ 24.)

**1.    Non-Medical Grievances**

For non-medical grievances, if a prisoner is unable to resolve a complaint through informal means, the prisoner may submit an Informal Complaint on an Inmate Informal Complaint Resolution form to the Correctional Officer ("CO") III in the prisoner's prison unit within 10 workdays from the date of the action that caused the complaint. (*Id.* ¶ 25.) The CO III investigates the informal complaint, attempts to resolve it informally, and provides a response to the prisoner within 15 workdays of its receipt.

If a prisoner's informal complaint cannot be resolved informally, the prisoner may submit a formal grievance to the unit CO IV Grievance Coordinator within 5 workdays from the date the prisoner receives the CO III's response to the prisoner's informal complaint. (*Id.* ¶ 27.) Within 15 workdays after the receipt of the formal grievance, the Deputy Warden issues a written response to the prisoner. (*Id.* ¶ 28.)

If the prisoner is not satisfied with the Deputy Warden's response, the prisoner may appeal the response to the Director within 5 workdays of receipt of the formal grievance response from the Deputy Warden. (*Id.* ¶ 29.) Within thirty calendar days, the Central Office Appeals Officer must prepare a response and submit it to the Director or Director's designee for signature. (*Id.* ¶ 30.) The Director's response is final, and constitutes an exhaustion of all remedies within the ADC for standard grievances. (*Id.* ¶ 32.)

### 2. Medical Grievances

For non-medical grievances, if a prisoner is unable to resolve a complaint through informal means, the prisoner has 5 workdays from receipt of the informal response to file a formal grievance to the CO IV Grievance Coordinator. (Doc. 156-2 at 14 (DO 802 § 5.1).) The Grievance Coordinator will forward the medical grievance to the Director of Nursing (DON), and within 15 workdays, the DON must investigate the complaint and prepare a written response, which will be forwarded to the prisoner. (*Id.* (DO 802 § 5.2).)

If the prisoner is dissatisfied with the DON's response, the prisoner can appeal the DON's decision to the Facility Health Administrator (FHA) within 5 workdays. (*Id.* (DO 6.0).) Within 30 workdays, the FHA must prepare a written response, which will be forwarded to the prisoner. (*Id.*) The FHA's response is final, and constitutes an exhaustion of all remedies within the ADC for medical grievances. (*Id.*)

For both standard (non-medical) and medical grievances, if a prisoner does not receive a response from the designated official at any stage of the grievance process within the time limits set in the Inmate Grievance Procedure, the prisoner is allowed to proceed to the next step of the grievance process. (Doc. 156 ¶ 31.) The time to proceed to the next step begins to run the day after a response was due back to the prisoner. (*Id.*)

### C.     Plaintiff's Grievance History

On August 16, 24, and 25, and September 2, 2018, Plaintiff sent inmate letters to Defendant Montaño regarding the food service discrepancies and the eleven meals he had not received because no corrective action had been taken: the August 16 inmate letter informed Defendant Montaño about three meals from August 15–16; the August 24 inmate letter informed Defendant Montaño about the discrepancies in five meals from August 17–24; the August 25 inmate letter informed Defendant Montaño about dinner that day; and the September 2 inmate letter informed Defendant Montaño about the two meals on August 29 and 31.  (Doc. 25 at 9, 12–13.)  Plaintiff asserts that Defendant Montaño did not respond to any of the letters and did not take any corrective action.  (*Id.*)

On August 24, 2018, Plaintiff sent an inmate letter to Defendant Merriman informing him about the food service problems on August 15–22 and explaining that he had not received eight meals.  (*Id.* at 12.)  On August 25, 2018, Plaintiff sent an inmate letter to Defendant Merriman informing him about the food service problem that day and explaining that he had not received dinner because no corrective action had been taken.  (*Id.* at 13.)  On September 2, 2018, Plaintiff sent an inmate letter to Defendant Merriman informing him about the food service discrepancies on August 29 and 31, and explaining that he had not received those two meals because no corrective action had been taken.  (*Id.*)  Plaintiff asserts Defendant Merriman did not respond to any of the letters and did not take any corrective action. (*Id.* at 12–13.)

Janah Barreras is an Administrative Services Officer II for the ADC, and her duties include investigating and tracking non-medical or "standard" grievance appeals to the ADC Director or Director's level, as well as maintaining a computerized record of such appeals.  (Doc. 156-2 (Barreras Decl.) ¶ 4.)  Barreras is responsible for the Central Office Grievance Appeals record, which provides a complete record of all final Director's-level grievance appeals received by the ADC's Central Office.  (*Id.*)

Barreras conducted a search of the ADC's Central Office Grievance Appeals records for any non-medical grievance appeals to the Director or Director's Level

submitted by Plaintiff involving any grievance concerning food-related issues from August 1, 2018 through October 31, 2018. (*Id.* ¶ 18.) Her search did not return any results showing that Plaintiff submitted any grievance appeals to the Director or Director's Level regarding any grievance concerning food-related issues from that time period. (*Id.* ¶ 19.)

In his First Amended Complaint, Plaintiff checked the boxes indicating that there are administrative remedies available at his institution and that he submitted a request for administrative relief regarding his claims in Count One. (Doc. 25 at 15.) However, Plaintiff checked the box indicating that he did not appeal his request for administrative relief regarding his claims in Count One to the highest level. (*Id.*) Plaintiff stated that, "Arizona Department of Corrections' policy, Department Order 802, Inmate Grievance Procedure, does not permit appeal of a medical grievance." (*Id.*)

### D.     Discussion

On this record, the facts show that an administrative remedy was available to Plaintiff under DO 802 and that Plaintiff did not fully exhaust the requirements of DO 802. Regardless of whether Plaintiff pursued his complaint as a medical grievance or as a standard/non-medical grievance, he was required to appeal his complaint to either the FHA or to the ADC Director to fully exhaust his claims, and the facts show that he did not. Construing the evidence in Plaintiff's favor, Plaintiff filed multiple inmate letters in an attempt to resolve his complaints informally, but he did not receive responses to his letters. (Doc. 25 at 12–13.) Even if this is true, DO 802 provides that prisoners can proceed to the next step of the grievance process if they do not receive timely responses at any stage of the process. (Doc. 156 ¶ 31.) Plaintiff does not explain why he failed to continue the grievance process. Moreover, Plaintiff did not provide a separate or controverting statement of facts, and the scant evidence concerning exhaustion available in his verified First Amended Complaint fails to create a genuine issue of material fact that the grievance process was unavailable to him.

Because Plaintiff does not rebut Defendants' evidence that he did not exhaust the available administrative remedies, and he has not presented competent evidence that the

administrative remedy was unavailable to him, the Court will grant summary judgment to Defendants and dismiss Plaintiff's claims against them.  *See Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (If a court grants summary judgment on non-exhaustion grounds, dismissal is without prejudice).  As such, the Court will not address Defendants' arguments concerning qualified immunity and the merits of Plaintiff's claims.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 155).

(2)     Defendants' Motion for Summary Judgment (Doc. 155) is **granted**, and Plaintiff's remaining claims are **dismissed without prejudice** for failure to exhaust the available administrative remedies.

(3)     The Clerk of Court must terminate the action and enter judgment accordingly.

Dated this 3rd day of January, 2023.

James A. Teilborg
Senior United States District Judge